**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW JERSEY

--------------------------------------------------------X

In Re:                                                  Chapter 11

BERLEY ASSOCIATES, LTD.,                                Case No.: 12-32032 (MBK)


                        Debtor.
--------------------------------------------------------X

BERLEY ASSOCIATES, LTD.,

                        Plaintiff,                      Adversary No.:  12-02208 (MBK)

        v.

GEZA ECKERT,

                        Defendant.
--------------------------------------------------------X

APPEARANCES:

Morris S. Bauer, Esq.
Norris, McLaughlin & Marcus, P.A.
721 Route 202-206, Suite 200
P.O. Box 5933
Bridgewater, New Jersey 08807
Attorney for Debtor/Plaintiff, Berley Associates, Ltd.

Keith A. Bonchi, Esq.
Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, A.P.C.
660 New Road, Suite No. 1-A
Northfield, New Jersey 08225
Attorney for Defendant, Geza Eckert


**MICHAEL B. KAPLAN, U.S.B.J.**


**MEMORANDUM DECISION**

## I.    INTRODUCTION

This matter is before the Court by way of a Motion for Summary Judgment ("Motion") filed on behalf of the Defendant, Geza Eckert ("Defendant" or "Eckert"), relative to Berley Associates, Ltd.'s ("Debtor" or "Plaintiff") adversary proceeding to recover avoidable transfers under 11 U.S.C. §§ 547 and 548.  In response to the Motion, Debtor filed a Cross Motion for Summary Judgment ("Cross Motion," and collectively the "Motions") seeking summary judgment in its favor.  A hearing on the Motions was held on March 20, 2013.

After careful review of the submissions of the parties, which include post-hearing submissions, the Court determines that the transfer of title to the Defendant in a pre-petition tax sale and foreclosure context, where there was no competitive bidding, may constitute a fraudulent conveyance under 11 U.S.C. § 548(a)(1)(B), and is not barred by the United States Supreme Court's holding in *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994).  Likewise, the Court further concludes that the transfer at issue may constitute an avoidable preference under 11 U.S.C. § 547(b).  For the reasons set forth below, the Motions are denied without prejudice.

## II.    JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(F) and (H).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[1]

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

III.    **FACTS/PROCEDURAL HISTORY**

The Debtor owned property located at 62 Speedwell Avenue in Morristown, New Jersey (the "Property"), which consists of a vacant lot.  The Debtor failed to pay real estate taxes on the Property in 1999 and, as a result, the township of Morristown conducted a public tax sale on June 14, 2000.  The successful bidder at the tax sale was Phoenix Funding, Inc. ("Phoenix"), which obtained a tax sale certificate and accompanying lien on the Property.  Subsequently, Phoenix assigned its lien to Defendant Eckert.

The Debtor consistently failed to pay subsequent real estate taxes on the Property and, on January 19, 2010, nearly ten years after Debtor's initial tax delinquency, Eckert filed a New Jersey state court complaint to foreclose on the tax sale certificate pursuant to N.J.S.A. § 54:5-1, *et seq*.  On September 16, 2011, the Superior Court of New Jersey entered an Order setting the time, place, and amount for redemption of the tax sale certificate.  The redemption amount, as of January 10, 2011, was $244,195.99, plus taxed costs, and the last day to redeem was set as November 1, 2011.  The Debtor failed to redeem the tax sale certificate and, on September 4, 2012, a final judgment was entered in the tax sale foreclosure action, enabling Eckert to obtain title to the Property.

On September 5, 2012, the Debtor filed a voluntary Chapter 11 bankruptcy petition and listed the Property with a fair market value of $500,000 in its Schedules of Assets and Liabilities.  On December 10, 2012, the Debtor filed the within adversary proceeding seeking to have this Court void the final judgment, which conveyed title to Eckert, as (i) a fraudulent transfer pursuant to 11 U.S.C. §548(a) and/or (ii) a preferential transfer pursuant to 11 U.S.C. §547(b).  The Debtor bottoms its complaint on the alleged sizeable difference between the Property's fair market value and the indebtedness owed to Eckert.  On February 8, 2013, Eckert filed the within

Motion seeking a favorable ruling on summary judgment grounds.  On March 7, 2013, the

Debtor filed its Cross Motion.

### A.    Defendant's Position

Eckert primarily relies upon the United States Supreme Court's decision in *BFP v.*

*Resolution Trust Corp.*, 511 U.S. 531 (1994) in support of his position that compliance with the

substantive and procedural requirements for the foreclosure of his tax lien bars subsequent

avoidance efforts by the Debtor.  Eckert further maintains that the structure of the New Jersey

tax sale law provides two incentives to purchase a tax sale certificate: (i) the money earned from

interest on the tax sale certificate and (ii) the opportunity to acquire the underlying property.

Eckert explains that the second incentive provides the possibility of acquiring property that is

worth much more than the redemption amount.  Thus, it is Eckert's position that the New Jersey

tax sale law, and its underlying objectives, contemplate a result in which a tax sale certificate

purchaser obtains title to a property for significantly less than the actual value of the property.

In *BFP*, the debtor argued that the acquisition of title as a result of a mortgage foreclosure

was a fraudulent conveyance because the debtor received "less than a reasonably equivalent

value in exchange for such transfer." *BFP*, 511 U.S. at 563.  The Supreme Court rejected fair

market value as the benchmark for measuring reasonably equivalent value and concluded that "a

fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in

fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law

have been complied with." *Id.* at 545.  Consequently, the Supreme Court has clarified that, at

least with respect to mortgage foreclosures, transfer of title for a value significantly less than the

fair market value of the property is not a fraudulent conveyance so long as the transfer complies

with state law.  This was, the Court noted, because the concept of fair market value "has no

applicability in the forced-sale context." *Id.* at 545. Eckert advances that the same reasoning applies to transfers of title as a result of tax sale foreclosures.

Eckert refers this Court to two prior decisions from this District which have addressed this issue in the tax sale foreclosure context. *See In re McGrath*, 170 B.R. 78 (D.N.J. 1994) and *In re 2435 Plainsfield Avenue, Inc.*, 72 F. Supp. 2d 482 (D.N.J. 1999) *aff'd* 213 F. 3d 629 (3d Cir. 2000). In *McGrath*, the Bankruptcy Court analyzed the similarities and differences between tax sale certificate foreclosures and mortgage foreclosures. Ultimately, Judge Stripp concluded that the two types of foreclosures were sufficiently similar that the rationale of the Supreme Court in *BFP* should apply equally to tax foreclosures. Additionally, Judge Stripp found that "the policy considerations favoring deference to mortgage foreclosure sales [discussed by the Supreme Court in *BFP*] appl[ied] with as much force to tax foreclosure sales." *In re McGrath*, 170 B.R. 82.

In *Plainsfield*, however, Judge Stripp seems to have reversed course from his reasoning in *McGrath*. There, a township purchased a tax sale certificate and ultimately foreclosed and took title to the underlying property. After the foreclosure, the former owner of the property filed for bankruptcy and brought an adversary proceeding against the township alleging, among other things, that the transfer should be set aside as a fraudulent conveyance. The defendant-township subsequently moved to dismiss the adversary proceeding in the Bankruptcy Court. In his *Plainsfield* decision, *In re 2435 Plainfield Ave.*, 223 B.R. 440 (Bankr. D.N.J. 1998), Judge Stripp takes a significant step back from his holding in *McGrath*, denying the defendant-township's motion to dismiss, and allowing the plaintiff-debtor's claim to proceed under both a state law fraudulent conveyance theory and an equity theory pursuant to N.J. Ct. R. 4:50-1 (which court rule provides New Jersey courts with discretionary authority to apply equitable

5

remedies).    On appeal to the District Court, however, Judge Thompson determined that the

Bankruptcy Court had erred when it found that a cause of action existed under the Fraudulent

Conveyance Act ("FCA").    Judge Thompson concluded that the FCA had been repealed and

superseded by the Uniform Fraudulent Transfer Act ("UFTA") and noted that "[t]he UFTA, as

modified by the Tax Sale Law, prevents a court from setting aside a tax foreclosure judgment as

a fraudulent conveyance." *In re 2435 Plainsfield*, 72 F.Supp. 2d 487.    As a result, the District

Court ruled that the plaintiff in *Plainsfield* could not proceed under a fraudulent conveyance

theory.    Likewise, Judge Thompson found no statutory or decisional authority to support Judge

Stripp's conclusion that the plaintiff held a claim for relief under an equitable theory.    For those

reasons, the appeal was granted and the case was remanded to the Bankruptcy Court.

Finally, Eckert disputes the Debtor's contention that the transfer of title is a voidable

preference under 11 U.S.C. §547(b).    Eckert again asserts that the ruling in *BFP* serves as a bar

to any recovery of alleged preferential transfers.    Additionally, Eckert asserts that there is no

equity in the Property and therefore even if the transfer is set aside, there would be no available

funds for unsecured creditors.

### B.    Debtor's Position

The Debtor posits that the elements necessary to establish a fraudulent conveyance claim

under 11 U.S.C. §548(a)(1)(B) have been satisfied in the unique circumstances of this case.

First, the Debtor asserts that it was insolvent at the time the transfer occurred.    The Debtor next

argues that it did not receive "reasonably equivalent value" for the transfer.    The Debtor contends

that determining "reasonably equivalent value" is a fact-specific analysis which should be made

on a case by case basis.    The Debtor also asserts that a determination for "reasonably equivalent

value" should be accomplished by analyzing the difference between the value received or paid for the property and the court-determined fair market value of the property.

The Debtor acknowledges that the holding in *BFP* is controlling in the mortgage foreclosure context; however, the Debtor seeks to distinguish the circumstances of *BFP* and its applicability in the case at bar. The Debtor highlights that there is no competitive bidding in connection with a tax foreclosure in New Jersey, which implements a "strict foreclosure." The Debtor emphasizes that public bidding only occurs with respect to the sale of the ***tax certificate*** by the municipality and not the transfer of ***title to the property*** at the time of the foreclosure of the redemption rights. Further, the Debtor points out that the value of tax certificates are fixed, and the only true bidding is with respect to the interest rate, the lowest of which becomes the winning bid. Thus, the bidding does not in any way reflect the value of the foreclosed property and therefore the Debtor urges the Court to conclude that the rationale in *BFP* does not apply in the context of tax sale foreclosures. In this regard, the Debtor asks this Court to also reject the holdings in *McGrath* and *Plainsfield* and deem the transfer in this case a fraudulent conveyance under 11 U.S.C. § 548(a)(1)(B).

Finally, the Debtor argues that the transfer was an avoidable preference under 11 U.S.C. § 547(b). The Debtor asserts that the circumstances of this case satisfy all elements of § 547 and the Debtor cites to *In re Rocco*, 255 Fed. Appx. 638 (3d Cir. Pa. 2007) and *In re Andrews*, 262 B.R. 299 (Bankr. M.D. Pa. 2001) in support of this position.

## IV.   DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a).[2]   As the Supreme Court has indicated, "[s]ummary judgment procedure is

properly regarded not as a disfavored procedural shortcut, but rather an integral part of the

Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive

determination of every action.'"   *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citing Fed.

R. Civ. P. 1).

The moving party bears the initial burden of demonstrating the absence of a genuine

dispute of material fact.  *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001) (*citing*

*Celotex Corp.*, 477 U.S. at 323).   In determining whether a factual dispute warranting trial exists,

the court must view the record evidence and the summary judgment submissions in the light

most favorable to the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Disputed material facts are those "that might affect the outcome of the suit under the governing

law."  *Id.* at 248.   A dispute is genuine when it is "triable," that is, when reasonable minds could

disagree on the result.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986) (citations omitted).   If the moving party will bear the burden of persuasion at trial, the

party must support its motion with credible evidence - using any of the materials specified in

Rule 56(c) - that would entitle it to a directed verdict if not controverted at trial.  *Celotex Corp.*,

477 U.S. at 331.   Such an affirmative showing shifts the "burden of production" to the party

opposing the motion and requires the party to either demonstrate the existence of a "genuine

---

[2] Federal Rule of Civil Procedure 56 was amended as of December 1, 2010.  As noted by the court in *Guiliano v. Coy (In re Coy)*:

> Subdivision (a) now contains the summary judgment standard previously stated in subdivision (c). Fed. R. Civ. P. 56 Advisory Committee's Note to 2010 Amendments ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word—genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination.").

2011 Bankr. LEXIS 3196, *6-7 (Bankr. D. Del. Aug. 22, 2011).

[dispute]" for trial or to request additional time for discovery under Fed. R. Civ. P. 56(f).  *Fed. R. Civ. P. 56(e)*.

Once the moving party establishes the absence of a genuine dispute of material fact, however, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine dispute of material fact for trial.  Fed. R. Civ. P. 56(e) (providing that in response to a summary judgment motion the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits  or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine [dispute] for trial").  *See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982); *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir. 1972).  If the nonmoving party's evidence is a mere scintilla or is not "significantly probative," the court may grant summary judgment.  *Liberty Lobby, Inc.*, 477 U.S. at 249-50.  The non-movant will prevail only if the evidence produced is of "sufficient quantum and quality" to allow a rational and fair-minded fact finder to return a verdict in his favor, bearing in mind the applicable standard of proof that would apply at trial on the merits.  *Id.* at 249.

### B.  Fraudulent Conveyance

A transfer of property is deemed constructively fraudulent under 11 U.S.C. §548(a)(1)(B) if, within two years prior to the filing of its bankruptcy petition, the transferor receives "less than reasonably equivalent value" in a transaction and the transferor:

> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of

such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B); *see also Jurista v. Amerinox Processing, Inc.,* 2013 U.S. Dist. LEXIS 49515 (D.N.J. Mar. 28, 2013). Thus, assuming *arguendo* that the Debtor was insolvent, undercapitalized, or could not pay its debts as they became due at the time of the alleged fraudulent transfer,[3] the question becomes whether the Debtor received "less than reasonably equivalent value" when title transferred to Eckert upon a final judgment on the tax sale foreclosure.

The Court turns first to Judge Stripp's analysis in *McGrath*. Notwithstanding Judge Stripp's conclusion that mortgage and tax sale certificate foreclosures are similar enough to apply the rationale of the Supreme Court in *BFP* to tax sales, the Court respectfully disagrees with Judge Stripp's conclusion. Rather, the Court agrees with the Debtor's position that the mechanics and procedures in mortgage and real estate tax foreclosures are distinctly different, leading to paramount substantive differences. Significantly, in a mortgage foreclosure action, competitive bidding for the underlying property is encouraged by means of advertising and public auction. As a result, a value for the property may be inferred. By contrast, with regard to tax sales, public bidding occurs at the inception of the process, within months after the delinquency, and is limited to the rate of interest on the unpaid taxes (which amounts have little connection to the value of the property). Similarly, the fixed redemption amount at the time of foreclosure of the tax sale certificate is calculated from the accrued taxes and interest thereon,

---

[3] Unlike 11 U.S.C. § 547, there is no presumption of insolvency under 11 U.S.C. § 548.

not the value of the underlying property.  *See, e.g., McKeever v. McClandon (In re McKeever)*, 166 B.R. 648, 650-651 (Bankr. N.D. Ill. 1994) ("[T]he only purpose of a tax sale is for the taxing authority to obtain payment of its delinquent taxes at the lowest cost of redemption. There is no correlation between the sale price and the value of the property. Therefore, it will be a rare case where the taxes paid at a tax sale will approximate the actual value of the property.").  Indeed, even Judge Stripp touched upon this concept in *McGrath*, noting that the "difference between the fair market value and the forced sales price is going to be greater with a tax foreclosure than with a mortgage foreclosure." *In re McGrath*, 170 B.R. at 82.

In *Plainsfield*, Judge Stripp appears to have reconsidered whether a tax sale certificate foreclosure may be considered a fraudulent conveyance, holding that a tax sale could be set aside under either a state law fraudulent conveyance or equity theory.  Although Judge Thompson disagreed and remanded the case on appeal, and although Judge Stripp's holding did not specifically analyze 11 U.S.C. § 548(a)(1)(B), this Court finds Judge Stripp's rationale to be instructive.  Specifically, the Court agrees that equity or "fairness" of the price is of paramount consideration in determining whether to set aside a tax sale.  In this regard, the Court is not persuaded by Eckert's argument that reasonably equivalent value was received by the Debtor simply because Eckert complied with the New Jersey tax sale foreclosure statutes.  Rather, this Court concurs with the approach taken in *City of Milwaukee v. Gillespie*, in which the court held:

> The court is not persuaded that "reasonably equivalent value" was received as a matter of law simply because the City complied with the foreclosure statute, or that the reasoning of *BFP* should apply to non-sale foreclosure proceedings. As such, this court finds that a judgment  of foreclosure, based solely upon delinquent taxes in a non-sale foreclosure proceeding, does not necessarily provide a property owner "reasonably equivalent value" for real estate without a public sale offering.

487 B.R. 916, 920 (E.D. Wis. 2013).   Indeed, contrary to Eckert's argument, this Court has previously observed that competitive bidding is a central factor in analyzing the fairness of a sale transaction and the value of the underlying property.  *See, e.g., In re Denaro*, 383 B.R. 879, 886 (Bankr. D.N.J. 2008) ("[P]robably the most significant factor in this analysis is whether there has been competitive bidding at the foreclosure sale."); *see also In re Kara Homes, Inc.*, 2012 Bankr. LEXIS 5730 (Bankr. D.N.J. Dec. 11, 2012) (Expanding on *Denaro*, the Court chose to place greater weight on actual bidding results at a court-approved sale in lieu of an "after the fact" judicial re-creation of fair market value.).

The Court views the absence of competitive bidding, together with appropriate advertising, as a significant bar to adjudicating "reasonably equivalent value" in a tax sale foreclosure scenario.   Courts in other jurisdictions have taken a similar approach.  *See, e.g., Wentworth v. Town of Action (In re Wentworth)*, 221 B.R. 316, 319-320 (Bankr. D. Conn. 1998) ("The rationale of the cases extending *BFP* to tax foreclosure sales does not apply to the instant matter because under Maine's forfeiture procedure for foreclosure of tax liens, the property was transferred without the possibility of judicial oversight, **without competitive bidding**, and without a public sale."); *Sherman v. Rose (In re Sherman)*, 223 B.R. 555, 559 (B.A.P. 10th Cir. 1998) ("Even if *BFP* were held to be applicable to tax sales, here the transfer of the real property to the appellee would still be avoidable, for the Wyoming tax sale statutes **do not have the protections** as do the Wyoming foreclosure sale statutes, as discussed in…*McGrath*…"); *D'Alfonso v. A.R.E.I. Inv. Corp. (In re D'Alfonso)*, 211 B.R. 508, 518 (Bankr. E.D. Pa. 1997) ("We are unwilling…to extend the **narrow holding** in *BFP* beyond mortgage foreclosures to include tax foreclosure sales, as in the present case.") (emphasis added).

In light of the foregoing, the Court finds that *BFP, McGrath,* and *Plainsfield* do not bar recovery by the Debtor under 11 U.S.C. §548(a)(1)(B), in that the price received at the tax sale certificate foreclosure does not necessarily reflect a reasonably equivalent value for the underlying property.[4] The Court's judgment is buttressed by the fact that a tax sale certificate foreclosure is a "strict foreclosure" that does not result in a public sale, but merely a straight transfer of title. As explained by the New Jersey Appellate Division in *Caput Mortuum, L.L.C. v. S & S Crown Services, Ltd.*:

> A non-municipal purchaser may, after two years from the date of sale, **institute an action to bar the right of redemption by way of a strict foreclosure action filed in the Chancery Division of the Superior Court**. N.J.S.A. 54:5-86. In such an action, the foreclosing tax certificate holder submits proofs and asks the court to fix the amount, time, and place for redemption. If no redemption is made by that deadline, final judgment is entered, barring the right of redemption and foreclosing all prior or subsequent alienations and descents of the lands and encumbrances thereon, except subsequent municipal liens, and the certificate holder is vested with an estate of inheritance in fee simple, free and clear of all liens. N.J.S.A. 54:5-87.

366 N.J. Super. 323, at 336-337 (App.Div. 2004) (emphasis added). As a result of New Jersey's "strict foreclosure" statute, therefore, competitive bidding was not present at the time of the transfer to ensure that market forces were acting efficiently to create a fair value for the Property at issue. Accordingly, as this Court deems *BFP* inapplicable in the tax sale certificate foreclosure context, there is at this juncture insufficient evidence to conclude that the Debtor received reasonably equivalent value from Eckert. *See Chorches v. Fleet Mortg. Corp. (In re Fitzgerald)*, 255 B.R. 807, 812 (Bankr. D. Conn. 2000) ("Connecticut fraudulent transfer law

---

[4] The Court further notes that neither *McGrath* nor *Plainsfield* are precedential. *See Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366, 1371 (3d Cir. Del. 1991) ("[I]t is clear that there is no such thing as 'the law of the district.' Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior resolution of those claims does not bar reconsideration by this Court of similar contentions.").

does not accord a conclusive presumption of 'reasonably equivalent value' to strict foreclosures…."  Accordingly, "the court concludes that a Connecticut strict foreclosure has insufficient evidentiary value to trigger the *BFP* conclusive presumption of Section 548(a)(1)(B) 'reasonably equivalent value.'"); *City of Milwaukee v. Gillespie*, *supra*, 487 B.R. 916, 921 (E.D. Wis. 2013) ("[D]epending on the amount the property owner owed in delinquent real estate taxes, and the value of the property, some transfers that result from tax lien foreclosures may very well be for 'reasonably equivalent value.'").

In written submissions and oral argument, counsel for Eckert admonishes this Court not to engage in "judicial activism" by legislating an outcome which cannot be reconciled with the New Jersey State Legislature's efforts to shield tax sale redemptions from fraudulent transfer scrutiny.  As noted herein, New Jersey tax sale law expressly excludes foreclosure judgments from such scrutiny, stating that "[s]uch judgment and recording thereof shall not be deemed a sale, transfer, or conveyance of title or interest to the subject property under the provisions of the 'Uniform Fraudulent Transfer Act.'"  N.J.S.A § 54:5-87.  Judicial activism often refers to situations in which courts go beyond the application and interpretation of existing law, in favor of judicial legislative efforts more akin to a judge's personal philosophies or political afflictions. Most often, the charge of judicial activism arises from those who contend that a court erred in failing to defer on policy decisions to other political bodies.  In this vein, Eckert urges this Court to heed the wishes of the New Jersey State Legislature in according special treatment to fraudulent transfers arising in the context of tax sale foreclosures.

It comes as no surprise that New Jersey legislators desired to protect municipalities (often the sole purchasers of the tax sale certificates) by shielding tax foreclosures from collateral attack as fraudulent transfers.  This Court, however, is charged with the responsibility to construe

the language of the Bankruptcy Code in a manner to ensure equitable and fair treatment to *all* similarly situated creditors. *See, e.g., Balaber-Strauss v. Murphy (In re Murphy)*, 331 B.R. 107, 120 (Bankr. S.D.N.Y. 2005) ("Certainly, New York State has a strong interest in assuring that its citizens meet their tax obligations and to enforce those obligations when they remain unmet. However, that interest cannot overcome Congress' policy choice that reasonably equivalent value must be obtained for a transfer of a debtor's property in the bankruptcy context, where the rights of other creditors are prejudiced."). The language of §§ 547 and 548 provide no exception for the foreclosure of tax sale liens, and this Court will not read into these provisions such a result. *In re Murphy,* 33 B.R. at 120 ("The Bankruptcy Code affords taxing authorities no exception, and a taxing authority is bound by the Bankruptcy Code to the same extent as any other creditor.") (citations omitted). Moreover, by requiring the parties to establish equivalent value, this Court is neither nullifying nor undercutting the New Jersey tax sale law. *See In re Williams*, 473 B.R. 307, 320 (Bankr. E.D. Wis. 2012), *aff'd in part, City of Milwaukee v. Gillespie*, *supra*, 487 B.R. 916 (E.D. Wis. 2013) ("By ruling that a 'strict foreclosure' pursuant to Wis. Stat. §75.521 constitutes a fraudulent transfer, the Court is not invalidating Wis. Stat. §75.521. It is holding that, in the context of a bankruptcy proceeding, such a transfer is subject to a §548 'reasonably equivalent value' analysis.").

Furthermore, the Court is not persuaded by Eckert's argument that avoidance of the transfer will chill the sale of tax sale certificates by clouding title to acquired properties. This need not be the result as the Court has ample discretion to fashion appropriate relief. As previously explained in *Official Committee of Asbestos Claimants of G-I Holdings, Inc. v. Building Materials Corp. (In re G-I Holdings, Inc.)*, it is within a court's discretion to determine whether the court should order payment of the value of the underlying property rather than order

the return of said property. 338 B.R. 232, 250-251 (Bankr. D.N.J. 2006).  The *G-I Holdings* court

further noted that "[c]ourts have utilized this discretion by employing divergent methods," and

outlined such methods as follows:

> Some courts have held that § 550(a) of the Code "gives a
> preference to the return of property unless it would be inequitable
> to do so." *Morris v. Kansas Drywall Supply Co. (In re Classic
> Drywall, Inc.)*, 127 B.R. 874, 876 (D. Kan. 1991) (*citing Gen.
> Indus., Inc. v. Shea (In re Gen. Indus., Inc.)*, 79 B.R. 124, 135
> (Bankr. D. Mass. 1987)). As articulated by the court in *In re
> Classic Drywall, Inc.*, "this approach finds some support in the
> language of § 550(a) and the history behind it. Section 60(b) of the
> Bankruptcy Act allowed the recovery of value only when the
> property had been converted. While this limitation is gone, §
> 550(a) lists first the recovery of property and then permits the
> recovery of value only upon the order of the court." 127 B.R. at
> 877. However, "other courts have simply read § 550(a) as placing
> in the court's discretion the choice between return of the property
> and an award of its value." *Id.* (*citing In re First Software Corp.*,
> 107 B.R. 417, 423 (D. Mass. 1989)).

*Id.* at 250-251.   Although the *G-I Holdings* court found it premature to determine which

methodology to employ, the court held that "[i]n interpreting § 550(a) of the Code, this Court

finds it within the discretion of the Court to decide at the appropriate time whether to order the

return of the property or order the payment of the value of the property." *Id.* at 252.  "Without a

complete record before the Court, it cannot be determined...whether the relief of recovering the

value of the lien would more appropriately restore the bankruptcy estate to the financial

condition it would have enjoyed if the transfer had not occurred…"  *Id.*

   This Court agrees with the rationale set forth in *G-I Holdings* and finds that it has the

discretion to fashion a monetary award should the Debtor ultimately prove successful on its

claims.  Although the Court has not had an evidentiary hearing to determine the value of the

Property, a monetary remedy would facilitate "the prime bankruptcy policy of equality of

distribution among creditors…"  *See Field v. Insituform East, Inc. (In re Abatement Envtl. Res.,*

*Inc.)*, 307 B.R. 491, 496 Fn. 10 (Bankr. D. Md. 2004), *citing* H.R. REP. NO. 95-595, at 177-78 (1977).  Moreover, providing monetary relief would prevent the clouding of title by precluding transfer of the Property back to the Debtor.  Without a proper valuation, however, this Court cannot determine on this record whether the value of the Property would more appropriately restore the Debtor to the financial condition it would have enjoyed if the transfer had not occurred; rather, the Court is merely stating that a monetary remedy may be warranted under the facts and circumstances of this case.

Lastly, the Court submits that Eckert ascribes far too much weight to the impact of this or any decision on the vigor and hardiness of the tax sale certificate industry.  This court has confidence that experienced investors are capable to factor in the minimal risks that *all* of the following may occur: (i) the property owner or a mortgagee fails to redeem the property by the date ordered by the court; (ii) the property has a value exceeding the value of the tax liens, with sufficient equity above all other liens and encumbrances; (iii) the property owner files a bankruptcy proceeding; (iv) the property owner pursues a fraudulent transfer and/or preference action to recover the transferred value; and (v) the property owner prevails on its litigation efforts.  Given the volume of the tax sale certificates sold throughout New Jersey, the Court remains dubious of an investor's decision to forego the opportunity to obtain a return on their investment of over eighteen percent, merely to avoid the aforementioned risks.

## C.  Avoidable Preference

Section 547(b) states that the trustee may avoid the transfer of an interest of a debtor to or for the benefit of a creditor for or on account of an antecedent debt owed by the debtor, while the debtor was insolvent, that enables the creditor to receive more than it would have in a Chapter 7 liquidation.  11 U.S.C. § 547(b); *see also Lubetkin v. Anthony Brusco Consulting (In re Astoria*

*Graphics, Inc.*), 2013 Bankr. LEXIS 609, 11-12 (Bankr. D.N.J. Feb. 14, 2013). Furthermore,

unlike a fraudulent transfer claim, a "debtor is presumed to have been insolvent on and during

the 90 days immediately preceding the date of filing of the petition." 11 U.S.C. § 547(f).

In this case, it is clear that the transfer of title in the Property to Eckert was on account of

an antecedent debt, namely the satisfaction of Eckert's tax claim.  As a result of the Debtor's

failure to pay the redemption amount, Eckert rightfully acquired title to the Property in

satisfaction of his claim.  However, what is unclear to this Court is whether the value of the

Property is in excess of Eckert's claim against the Debtor for the redemption amount, thereby

enabling Eckert to receive a windfall, in excess of the dividend to be paid in a Chapter 7

proceeding.  If it is determined that the value of the Property is in excess of Eckert's claim, then

the Court would agree with the Debtor that the transfer at issue may be avoided pursuant to

§ 547.  In this regard, the Court is persuaded by the ruling in *Norwest Bank Minn., N.A. v.*

*Andrews (In re Andrews)*, which analyzed § 547 in the context of foreclosure sales and explained

as follows:

> In bringing the property back into the estate, the creditor's lien is
> not dissolved nor is its status as a secured creditor destroyed. It
> remains entitled to adequate protection and all of the other
> privileges and rights provided by the code to secured creditors. **I,**
> **therefore, find that a prepetition bankruptcy foreclosure sale**
> **can be avoided under the dictates of 11 U.S.C. § 547 when the**
> **secured claim of the foreclosing party is substantially less than**
> **the fair market value of the property.** In support, see *In re*
> *Wheeler*, 34 B.R. 818 (Bankr. N.D.Ala. 1983), *Matter of Fountain*,
> 32 B.R. 965 (Bankr. W.D.Mo. 1983), *In re Park North Partners,*
> *Ltd.*, 80 B.R. 551 (N.D.Ga. 1987), *In re Winters*, 119 B.R. 283
> (Bankr. M.D.Fla. 1990). In each of the cited cases, the secured
> creditor foreclosed on real estate by bidding at a foreclosure sale
> an amount less than the fair market value of the property. Each of
> the courts took a practical, plain language approach to the reading
> of the statutory language of § 547 and found that the creditor in
> each case received more by way of the prepetition foreclosure than

> that creditor would have received and been entitled to in a Chapter
> 7 liquidation.

262 B.R. 299, 306 (Bankr. M.D. Pa. 2001) (emphasis added).  Accordingly, the Court rules that

the transfer of title in the Property to Eckert at the tax foreclosure sale may be deemed a

preferential transfer under § 547, if it is determined that the fair market value of the Property is

more than the redemption amount owed to Eckert at the time of the foreclosure.  As explained

above, however, absent competitive bidding or another method of establishing reasonable value,

the Court cannot determine on this record the value of the Property.  Thus, there remains a

genuine dispute of fact, *i.e.,* the value of the Property, which precludes the Court from granting

summary judgment at this juncture.

## V.    CONCLUSION

Based on the foregoing, the Motions are DENIED without prejudice.  Counsel for the

Debtor is directed to submit a form of order consistent with the Court's findings.

Dated: May 16, 2013

Honorable Michael B. Kaplan
United States Bankruptcy Judge